■ ANITA KATZ, Individually and as Executrix of MARTIN KATZ, Deceased, Appellant, v ST. FRANCIS HOSPITAL et al., Defendants, and ANDREW BERKE et al., Respondents. [973 NYS2d 672]—

In an action, inter alia, to recover damages for medical malpractice, the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Queens County (Rosengarten, J.), entered September 8, 2011, as granted that branch of the motion of the defendant Andrew Berke which was pursuant to CPLR 4404 (a) to set aside so much of a jury verdict as found that he departed from good and accepted medical practice by failing to properly coordinate the medical care of the decedent during his hospitalization and that the departure was a substantial factor in causing his injury, and, in effect, granted that branch of his motion which was for judgment as a matter of law, and denied those branches of her cross motion pursuant to CPLR 4404 (a) which were to set aside so much of the jury verdict as found that the defendant Michael J. Goldstein did not depart from good and accepted medical practice by failing to include intestinal ischemia in his differential diagnosis from July 5, 2000, through July 7, 2000, and that the defendant

Andrew Berke did not depart from good and accepted medical practice by failing to include intestinal ischemia in his differential diagnosis from August 6, 2000, through August 15, 2000.

Ordered that the order is affirmed insofar as appealed from, with costs.

On June 26, 2000, the defendant Andrew Berke, an interventional cardiologist, admitted Martin Katz (hereinafter the decedent) to St. Francis Hospital for a cardiac catheterization. After that procedure revealed multiple blockages in the decedent's coronary arteries, on June 28, 2000, the defendant Robert Colangelo performed a quadruple coronary bypass, which was uneventful. The plaintiff contends that the decedent developed intestinal ischemia, which caused his condition to deteriorate, ultimately resulting in his death on September 18, 2000.

Berke described his role as coordinating "all outstanding medical care" as well as cardiac issues. He called in specialists to handle problems beyond his expertise, although he did not tell the specialists what to do. On July 6, 2000, based on the decedent's complaints of abdominal pain, Berke ordered a consultation with the defendant Michael J. Goldstein, a gastroenterologist, who determined that there were no significant gastrointestinal problems.

The plaintiff commenced this action, inter alia, to recover damages for medical malpractice against, among others, Berke and Goldstein. After a trial, the jury found, inter alia, that Goldstein did not depart from good and accepted medical practice by failing to include intestinal ischemia in his differential diagnosis from July 5, 2000, through July 7, 2000, and that Berke did not depart from good and accepted medical practice by failing to include intestinal ischemia in his differential diagnosis from August 6, 2000, through August 15, 2000. However, the jury found that Berke did depart from good and accepted medical practice by failing to properly coordinate the medical care given to the decedent during his hospitalization, and that the departure was a substantial factor in causing his injury.

Berke moved to set aside the jury verdict against him and for judgment as a matter of law, and the plaintiff cross-moved, inter alia, to set aside the jury verdict finding that Goldstein did not depart from good and accepted medical practice by failing to include intestinal ischemia in his differential diagnosis from July 5, 2000, through July 7, 2000, and that Berke did not depart from good and accepted medical practice by failing to

include intestinal ischemia in his differential diagnosis from August 6, 2000, through August 15, 2000. In the order appealed from, the Supreme Court granted Berke's motion and denied the plaintiff's cross motion. We affirm on the grounds that the evidence at trial supported so much of the jury verdict as found that Goldstein did not depart from good and accepted medical practice, and that there was no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion reached by the jury that Berke's departure in failing to properly coordinate the decedent's medical care was a substantial factor in causing his injury (see Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]; Guclu v 900 Eighth Ave. Condominium, LLC, 81 AD3d 592, 592 [2011]).

At the trial, the defense expert Dr. Charles Maltz testified that it was reasonable for Goldstein to stop treating the decedent on July 7, 2000, since, at the time, he had been pain free for approximately 12 hours and the results of a CT scan indicated no problems with the decedent's intestines. Goldstein testified that, to a reasonable degree of medical certainly, no further testing was required, based upon the results of a CT scan and because the decedent's clinical status had improved.

Thereafter, Berke did not include intestinal ischemia in his differential diagnosis from August 6, 2000, through August 15, 2000, which the jury found was not a departure from good and accepted medical practice. Indeed, the plaintiff's expert Dr. Maril Korsten acknowledged that on August 9, 2000, there were positive findings with respect to the decedent's abdominal area. Korsten noted that on August 10, 2000, blood tests revealed enteroccoal fecales, which is a sign of intestinal ischemia. However, there was also pseudomonas aeruginosa in the decedent's blood, indicating another serious infection.

According to Korsten, the chances of saving the decedent after August 15, 2000, were "quite poor," because the intestinal ischemia was allowed to progress. The decedent's intestinal ischemia was diagnosed on or about August 23, 2000, when a CT scan showed thickening near the splenic flexure, which was a sign of intestinal ischemia. However, according to the decedent's son, after August 22, 2000, the decedent "rallied" before his condition worsened yet again. He suffered cardiac arrest on September 6, 2000, and experienced a reduction in blood flow not only to his bowel but also to his extremities. The decedent's autopsy indicated that there was no rupture of the necrosis of the bowel and, therefore, any infection did not spread from the bowel throughout the abdomen. Rather, the autopsy report indicated that the decedent died from necrosis of multiple

organs, including the liver and kidneys, as well as sepsis and chronic respiratory insufficiency.

In view of the foregoing, the plaintiff's contention that the decedent's condition was caused by his intestinal ischemia, which was allowed to progress because Berke failed to properly coordinate his care, was not supported by the evidence. The jury's finding against Berke as to proximate cause was not based on legally sufficient evidence, but rather, was based upon pure speculation (*see Doobay v Girardi*, 104 AD3d 726, 729 [2013]; *Kinch v Adams*, 46 AD2d 467 [1975], *affd* 38 NY2d 792 [1975]). Accordingly, the Supreme Court correctly granted that branch of Berke's motion which was to set aside so much of the jury verdict as found that his departure from good and accepted medical practice in failing to properly coordinate the decedent's medical care was a substantial factor in causing his injury, and correctly, in effect, granted that branch of his motion which was for judgment as a matter of law.

The plaintiffs' remaining contentions are without merit or need not be addressed in light of our determination. Dillon, J.P., Angiolillo, Chambers and Hinds-Radix, JJ., concur.